IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TRUSTEES OF THE OHIO :
BRICKLAYERS PENSION FUND,
*et al.*, : Civil Action 2:07-cv-1056

       Plaintiffs, :
                                      Magistrate Judge Abel
   v. :

ANGELO'S CAULKING & :
SEALANT, INC.,

       Defendant.

## ORDER

This matter is before the Court pursuant to Plaintiffs' Motion for Summary Judgment (Doc. 20). For the reasons set forth herein, Plaintiffs' Motion is **GRANTED IN PART.**

### Issues at Bar

The Court notes, as a preliminary matter, that the issues presently at bar in this case are not those originally pled. This action was initiated on October 15, 2007, by the Trustees of the Ohio Bricklayers Pension Fund, the Trustees of the Ohio Bricklayers Health and Welfare Fund, the Trustees of the Greater Cincinnati

1

Welfare Fund, the Trustees of the Bricklayers Local No. 55 VEBA Fund, the Trustees of the Bricklayers Local No. 55 Pension Fund, and the Trustees of the Bricklayers and Trowel Trades International Pension Fund ("Plaintiffs") against Angelo's Caulking & Sealant, Inc. ("Defendant"), for failure to contribute to pension funds.  Plaintiffs attached to their complaint three contracts.  One was between Local 18 of the International Union of Bricklayers and Allied Craftworkers ("Local 18") and the Tile, Marble and Terrazzo Contractors Association of Greater Cincinnati.  (Doc. 1-2.)  Another was between the the Central Ohio Division, Associated General Contractors, the Masonry Contractors Association, Inc. Of Columbus, Ohio, and the Bricklayers and Allied Craftworkers Local Unions No. 45 and 55 of Ohio ("Locals 45 and 55").  (Doc. 1-3.)  A third was a later agreement between the Tile, Marble and Terrazzo Contractors Association of Greater Cincinnati and Local 18.  (Doc. 1-4.)

However, on October 3, 2008, Plaintiffs moved for summary judgment, abandoning the exhibits attached their complaint, attaching an entirely new set of purportedly breached contracts, and restating the factual posture of this case in terms of these new contracts.[1]  Plaintiffs aver that "[s]ince these documents are properly before the Court, it is not necessary for Plaintiffs to amend their Complaint," but offer to do so if the Court deems it necessary.  (Doc. 25 at 4.)  Defendant has suggested (Doc. 24 at 3.) that this Court should not consider the new

---

[1]Plaintiffs have admitted that Defendant is not bound by the contracts attached to their complaint.  (Doc. 20-2 at 8;  Doc. 25 at 2.)

contracts attached to Plaintiff's motion for summary judgment, but has not formally moved to strike these as irrelevant, moved for a more definite statement, moved for sanctions pursuant to Fed. R. Civ. Pro. 11(b)(2), or sought other relief.  The Court will therefore treat the allegations in Plaintiffs' Motion for Summary Judgment as those at issue in this case, and those contracts attached to Plaintiffs' Motion for Summary Judgment and its supporting briefs as the basis of Plaintiffs' claims.

### The 18/2 CBAs

• Exhibit A to Plaintiffs' motion (Doc. 20-6) is a collective bargaining agreement ("the 1987-1989 18/2 CBA") which recites that it was negotiated by the "Labor Relations Division, Mason Contractors Association of Cincinnati" (the "Cincinnati Association") and the "Bricklayers, Terrazzo, Mosaic and Tile Layers Union No. 18 of Ohio and Bricklayers Union No. 2 of Kentucky" ("Locals 18/2").  Its stated term is from June 1, 1987 to June 1, 1989.  It recites in Article 38 that "[s]uch voluntary changes as may be desired by either or both parties hereto shall be submitted in writing, and in detail, not less than sixty (60) days prior to the expiration of this Agreement;  otherwise this agreement shall continue in full force and effect from year to year in the absence of a similar notice."  It further recites in Article 40 that "[t]his Agreement shall be effective when signed by the individual employer and the union, and shall remain in force in accordance with the terms of this Agreement."  The contract is dated August 1, 1988, and signed by

representatives of Locals 18/2 and Defendant.[2]  It does not contain a clause providing that Defendant would become a member of a multi-employer bargaining unit.

• Exhibit B to Plaintiffs' motion (Doc. 20-7) is a collective bargaining agreement ("the 2004-2007 18/2 CBA") which recites that it was negotiated by the Cincinnati Association and Locals 18/2.  Its stated term, according to Article 36, is from June 1, 2004 to May 31, 2007.  It recites in Article 36 that:

> Such voluntary changes as may be desired by either or both parties hereto shall be submitted in writing, and in detail, not less than sixty (60) days prior to the expiration of this Agreement; otherwise this Agreement shall continue in full force and effect from year to year in the absence of a similar notice.  This Agreement shall be effective when signed by the individual Employer and the Union, and shall remain in force in accordance with the terms of this Agreement.
>   By execution of this Agreement the Employer authorizes the Mason Contractors Association of Cincinnati to act as its collective bargaining representative for all matters relating to this Agreement.  The parties agree that the Employer will hereafter be a member of the multi-Employer bargaining unit by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least sixty (60) days prior to the current expiration dates of the Agreement.

The contract is undated, but is signed by "J P Morgan" on behalf of Defendant.  It is not signed by Locals 18/2.  (Doc 20-7 at 8.)

• Exhibit C to Plaintiffs' motion (Doc. 20-8) is a collective bargaining agreement ("the 2007-2010 18/2 CBA") which recites that it was negotiated by the Cincinnati Association and Locals 18/2.  Its stated term, according to Article 36, is

---

[2] Defendant agrees that it entered into Exhibit A.  Doc. 24 at 4.

from June 1, 2007 to May 31, 2010, and otherwise contains language in Article 36 identical to Exhibit B. The contract is undated, but is signed by "James F. Reid" on behalf of Locals 18/2. It is not signed by Defendant.

### The 45/55 CBAs

• Exhibit E to Plaintiffs' motion (Doc. 20-10) is a collective bargaining agreement ("the 1992-1995 45/55 CBA") which recites that it was negotiated by the Central Ohio Division, Associated General Contractors and Masonry Contractors Association, Inc. of Columbus, Ohio (the "Columbus Association"), and Local Union No. 45 and Bricklayers and Allied Craftsmen Local Union No. 55 Ohio ("Locals 45/55"). It states that the Columbus Association shall bargain only for those members of the Association who have assigned their bargaining rights to the Association. (Doc. 20-10 at 3.) Article IV, Section 10 provides that:

> Section 10. <u>Termination for Non-Association Signatory Contractors</u> - Any contractor who is signatory to or bound by this collective bargaining agreement and who at the time of its expiration is not a member of the Association(s) who are signatory to this collective bargaining agreement acknowledges that notice of termination or modification of said agreement which is given to the Association(s) shall be notice to said contractor of the Union's desire to modify or terminate this Agreement.
> In the event that said contractor (who is not a member of the Association(s) at the time this collective bargaining agreement is due to expire) shall not give to the Union written notice of its intention to negotiate separately for a renewal collective bargaining agreement within the sixty (60) days set forth herein for the Association(s), then said contractor shall be deemed to have appointed said Association(s) as its agent for collective bargaining and agreement entered into between the Union and said Association(s).
> The provisions of this section shall operate for successive

5

collective bargaining agreements until such time as the contractor
gives timely notice to the Union that it desires to negotiate separately
or until such time as the Union gives notice that it does not desire to
have the Association(s) act as the bargaining agent for the contractor.

The stated term of this CBA, according to Article XIII, was from June 1, 1992 to May 31, 1995.  The agreement provided that it "shall continue from year to year unless either party hereto notifies the other party sixty (60) days prior to termination date hereof of intention to modify and/or terminate."  Appended to the agreement was a signature page entitled "Agreement of Non-Members of the Association", providing that Defendant wished to become an additional party to this contract.  The agreement was dated July 8, 1992, and signed by "Angelo Gesouras" on behalf of Defendant.

• Exhibit F to Plaintiffs' Motion (Doc. 20-11) is a collective bargaining agreement ("the 1995-1998 45/55 CBA") negotiated between the Columbus Association and Locals 45/55.  It stated in its introduction that:

> The Agreement is negotiated by the Union and by the Association as
> bargaining agents for its Employer members and shall be binding upon
> such Employer members.  No other Agreement shall be negotiated by
> the Union or Non-Member Employers without knowledge of the
> Associations.
> The Central Ohio Division, Associated General Contractors, shall
> bargain only for those members of the Association who have assigned
> their bargaining rights to the Association.  A list of such members has
> been presented to the Union.
> It is mutually agreed that this Agreement may extend to other
> Employers, not members of the Contractors Association, upon signing
> a copy of the Agreement.

It provided further, at Article IV, Section 10, that:

> Any contractor who is signatory to or bound by this collective

6

bargaining agreement and who at the time of its expiration is not a member of the Association(s) who are signatory to this collective bargaining agreement acknowledges that notice of termination or modification of said agreement which is given to the Association(s) shall be notice to said contractor of the Union's desire to modify or terminate this Agreement.

   In the event that said contractor (who is not a member of the Association(s) at the time this collective bargaining agreement is due to expire) shall not give to the Union written notice of its intention to negotiate separately for a renewal collective bargaining agreement within the sixty (60) days set forth herein for the Association(s), then said contractor shall be deemed to have appointed said Association(s) as its agent for collective bargaining and agreement entered into between the Union and said Association(s).

The provisions of this section shall operate for successive collective bargaining agreements until such time as the contractor gives timely notice to the Union that it desires to negotiate separately or until such time as the Union gives notice that it does not desire to have the Association(s) act as the bargaining agent for the contractor.

The stated term of this CBA, according to Article XIII, is from June 1, 1995 to May 31, 1998. The agreement further provided that it "shall continue from year to year unless either party hereto notifies the other party sixty (60) days prior to termination date hereof of intention to modify and/or terminate." Appended to the agreement was a signature page entitled "Agreement of Non-Members of the Association", providing that Defendant wished to become an additional party to this contract. The agreement was dated September 25, 1995, and signed by "Angelo Gesouras" on behalf of Defendant.

 • Exhibit G to Plaintiffs' Motion (Doc. 20-12) is a collective bargaining agreement ("the 2004-2007 45/55 CBA") negotiated between the Columbus Association and Locals 45/55. Its language is identical in all material respects to that of Exhibit F. Its stated term, according to Article XIII, is from June 1, 2004 to

May 31, 2007. It contains language identical to that of Exhibit F stating that it would continue from year to year, but also includes the following provision regarding termination:

> An individual employer may modify and/or terminate this Agreement by notifying the other party, in writing, sixty (60) days prior to the annual anniversary date of his intent to modify and/or terminate this Agreement following which this Agreement shall terminate as of that anniversary date for that employers [sic].

Accompanying Exhibit G was a copy of the "Agreement of Non-Members of the Association" signature page from Exhibit E. No signature page for Exhibit G appears to be extant.

• Exhibit H to Plaintiffs' Motion (Doc. 20-13) is a collective bargaining agreement ("the 2007-2012 45/55 CBA") negotiated between the Columbus Association and Locals 45/55. Its language is identical in all material respects to that of Exhibit G. Its stated term, according to Article XIII, is from June 1, 2007 until May 31, 2012. It contains language identical to that of Exhibit G with respect to continuing from year to year and the means for an individual employer to terminate the agreement. Exhibit H was not signed by either Defendant or Locals 45/55.

### Plaintiffs' Claims

Plaintiffs, a group of pension funds claim, in their Complaint and in their motion for summary judgment, that Defendant ceased in June 2007 to submit reports and payments to them. These reports and payments were required by the

8

terms of the collective bargaining agreements which Defendant entered into with Locals 18/3 and 45/55. They are suing pursuant to Section 301 of the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 for all unpaid pension contributions, as well as liquidated damages, interest, and attorney fees. Plaintiffs also demand an accounting of Defendant's books and records for January 2005 to the present.

Defendant concedes for purposes of this motion for summary judgment that it was a party to collective bargaining agreements with Local 18 and Local 55 in the past, but it maintains that it refused to renew its collective bargaining agreements after they both expired in May 2007. (Doc. 24 at 2.)

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

9

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations [...] but [...] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### Status of the 18/2 CBAs

Defendant concedes that it entered into the 1987-1989 18/2 CBA (Exhibit A).

Doc. 24 at 4. Thus, it is undisputed that Defendant was bound by a collective bargaining agreement with Locals 18/2 from at least August 1, 1988 through June 1, 1989. Under the terms of the 1987-1989 18/2 CBA, in the absence of a written submission of voluntary changes, or a "similar notice", it continued from year to year thereafter (the so-called "evergreen clause").

The next chronologically sequential 18/2 CBA in evidence is Exhibit B, which covers the period from June 1, 2004 to May 31, 2007. This CBA likewise contained an evergreen clause automatically renewing from year to year, and also contained, unlike the 1987-1989 18/2 CBA, a provision whereby Defendant would authorize the Cincinnati Association to act as its collective bargaining agent in future. It was signed by "J P Morgan", ostensibly on behalf of Defendant. Defendant asserts that Mr. Morgan had no authority to enter into such agreement. Plaintiffs assert that Mr. Morgan had apparent authority, and that Angelo's Caulking & Sealant's payments to the Funds evidence actual authority. Plaintiff further argue that Defendant is therefore bound by the 2004-2007 18/2 CBA; since Defendant was bound by the 2004-2007 CBA, it was bound to the 2007-2010 CBA by virtue of having assented to any subsequent agreement negotiated by the Cincinnati Association.

However, the copy of the agreement submitted to the Court is not signed by the Union. (Doc. 20-6 at 8.) Article 36 of the CBA explicitly states that "[t]his Agreement shall be effective *when signed by the individual Employer and the Union*, and shall remain in force in accordance with the terms of this Agreement."

11

(emphasis added) This provision established a condition precedent to the effectiveness of the contract. "A condition precedent is a condition which must be performed before the obligations in the contract become effective." *Troha v. Troha*, 105 Ohio App.3d 327, 334 (Ohio App. 1995), citing *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1 (1917). This condition precedent, like any other contractual provision, must be given effect if possible. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 89 (2004).

Since the copy of the collective bargaining agreement submitted to the Court is not signed by the union, Plaintiffs have failed to offer evidence that the condition precedent was satisfied. Even if the Court were to assume that the 2004-2007 collective bargaining agreement has been signed by Local 55, the 1987-1989 CBA did not provide that Defendant would be bound by later agreements negotiated by the Cincinnati Association, and so none such – including the 2004-2007 or 2007-2010 CBAs – later applied merely because the Association negotiated them.

Therefore, it appears, as far as can be determined from the evidence presently before the court, that Defendant entered into the 1987-1989 CBA, and that the 2004-2007 CBA, whether or not Defendant signed it, never became effective. By operation of the 1987-1989 CBA's evergreen clause, it renewed itself annually thereafter. On February 6, 2008, Defendant's counsel sent correspondence to Local 18 advising it that it was Defendant's position that it was not a party to any CBA with Local 18, and that, if such termination had not taken place sooner, it was now terminating the "current collective bargaining agreement". (Doc. 20-9.)

This notice, although obviously drafted to refer to collective bargaining agreements between Defendant and Local 18, not the agreements now at issue between Defendant and Local 18/2, nevertheless indisputably put Local 18 on notice of the termination of their relationship.[3] As the 1987-1989 CBA requires only sixty days' notice of desired changes, or "a similar notice", Defendant's correspondence fulfilled the requirement that the unions be made aware of the end of the collective bargaining agreement.

Plaintiffs argue in the alternative that Defendant is bound by the current 18/2 CBA by virtue of its course of dealing. They point to the fact that Defendant, through May of 2007, continued to submit monthly contribution reports, and that such reports stated that they were submitted "in accordance with the obligations assumed by the firm under the current applicable collective bargaining agreement and the provisions of the applicable trust agreements." Doc. 20-2 at 23. However, such reports do not acknowledge that Defendant was bound by any *particular* collective bargaining agreement, merely the "current applicable" one. In this case, the current applicable CBA was apparently that of 1987-1989.

Defendant may perhaps have submitted similar notices prior to February 6,

---

[3] In light of Plaintiffs' initial confusion in its pleadings as to what CBAs existed between Local 18 and Defendant, Defendant's similar confusion in its correspondence is reasonable. It also appears to the court that the relationship between Local 18 and Local 2 was sufficiently close that Local 2 was thereby put on notice as well. The 1987-1989 18/2 CBA does not appear to contemplate termination of the relationship between Defendant and only one of the two union locals, and it was executed jointly on behalf of Locals 18 and 2.

13

2008, and may have entered into a new collective bargaining agreement with Locals 18/2 between 1989 and 2004.[4] No evidence of such notices or agreements is before the court, and Defendant has not moved for summary judgment to present its own theory. All that can be determined at present, is that, unless some other CBA not in evidence supervened, the latest possible date at which Defendant was bound by a CBA with Locals 18/2 was May 31, 2008 (the anniversary date of the 1987-1989 18/2 CBA), and the collective bargaining agreement under which Defendant was bound was the 1987-1989 18/2 CBA, renewed annually under its evergreen clause.

Status of the 45/55 CBAs

It appears to be undisputed that Defendant entered into the 1992-1995 45/55 CBA. Defendant asserts that it "last signed an agreement with Local 55 in 1995 – Exhibit 'F' to Plaintiffs' Motion." (Doc. 24 at 4.) Defendant argues that it never entered into the 2004-2007 45/55 CBA, because it never signed it. The copy of the CBA attached to Plaintiffs' Motion (as Exhibit G) does not contain a signature page; rather, a copy of the "Agreement of Non-Members of the Association" from the 1992-1995 45/55 CBA has been appended to the document instead. Defendant further asserts that it did not execute the 2007-2010 45/55 CBA either.

---

[4] Angelo Gesouras, in his affidavit accompanying his memorandum contra Plaintiffs' motion for summary judgment, states that "no one (authorized or not), has signed a collective bargaining agreement with Local 18 since 2001." (Doc. 24-2 at ¶5.) There is no evidence on the record of a CBA entered into between Defendant and Locals 18/2 in 2001, and Plaintiffs have not asserted that one exists.

The 1995-1998 45/55 CBA, unlike the 1987-1989 18/2 CBA discussed above, contained language concerning the assignment of collective bargaining rights to the Columbus Association. In its introduction, the agreement provided that it could extend to other employers who were not members of the Columbus Association, upon such contractor signing a copy. The Agreement of Non-Members of the Association appended to the 1995-1998 45/55 CBA, which was signed by Defendant, states that the signatory agreed to "accept and be bound by all the terms and provisions of said agreement". (Doc. 20-11 at 20.) The agreement further provided at Article IV, Section 10 that if, at the time the agreement expired, a signatory but non-member contractor had not given the union sixty days' written notice that it intended to negotiate separately for a renewal collective bargaining agreement, then it automatically appointed the Columbus Association to be its agent for collective bargaining. In such a case, the nonmember would be bound by whatever subsequent agreements were made between Locals 45/55 and the Columbus Association, until such time as the nonmember gave timely notice to the union that it wished to negotiate separately.

The application of the 1995-1998 45/55 CBA to the facts at hand is clear. Defendant signed the agreement as a non-member of the Columbus Association. It apparently never gave notice to the union that it no longer wished to assign its collective bargaining rights to the Columbus Association and instead wished to negotiate separately. Defendant was therefore bound automatically to the 2004-2007 45/55 CBA when the Columbus Association entered into it.

15

The 2004-2007 45/55 CBA expired on May 31, 2007. Defendant's president, in his affidavit (Doc. 24-1), asserted that it was his understanding that his company's obligations under its agreement with Local 55 were concluded in May 2007, and that he ceased making contributions to Plaintiffs after that month (except for any submitted in error). (Doc. 24-1 at ¶2-3.) He claimed, in addition, that no association is authorized to enter into collective bargaining agreements on its behalf. (Doc. 24-1 at ¶4.) He also asserted that Defendant never intended to continue any relationship with Local 55 after May 2007. (Doc. 24-1 at ¶11.)

Defendant's misunderstanding of its situation and obligations is unfortunate. However, by assigning its collective bargaining rights to the Columbus Association in 1995, and never revoking them, Defendant agreed to automatically become bound by whatever collective bargaining agreements the Columbus Association entered into with Locals 45 and 55.[5] In this case, those subsequent CBAs were the 2004-2007 and the 2007-2012. It will be bound by the 2007-2012 45/55 CBA, and

---

[5] Defendant has argued that Plaintiffs are estopped from asserting that it is bound by the 2007-2012 CBA because Plaintiff IPF sent it correspondence on May 6, 2008, stating that it "has determined that you have ceased to have an obligation to contribute to the IPF", and because IPF's counsel sent it correspondence on June 26, 2008, stating that May 31, 2007 was "the date of expiration of the relevant collective bargaining agreement." (Doc. 24-2 at 4, 11.)

Plaintiffs argue that the IPF's assertion was an error, and that, upon receiving updated information from the local pension funds, it retracted its statement. They further point out that Defendant has not claimed that it relied on this misstatement to its detriment in any way. Plaintiff is correct in asserting that an equitable estoppel requires "a representation of past or existing fact made to a party who relies upon it reasonably." *Hortman v. City of Miamisburg*, 110 Ohio St.3d 194, 198 (2006). IPF and the other Plaintiffs are therefore not estopped from now asserting that Defendant is still bound.

the obligations set forth in that agreement, until May 31, 2012.

Conclusions

The Court makes the following findings of law:

• Defendant was bound by the 1987-1989 collective bargaining agreement with Locals 18/2 attached as Exhibit A to Plaintiffs' motion for summary judgment (Doc. 20-5). If Plaintiffs cannot prove at trial that Defendant signed or is otherwise bound by a subsequent collective bargaining agreement, it was terminated by Defendant's notice of February 6, 2008, effective May 31, 2008.

• Unless it can be shown that Defendant entered into a new collective bargaining agreement with Locals 18/2 between 1989 and 2004 which assigned its bargaining rights to someone else, Defendant did not enter into, and was not bound by, the 2004-2007 and 2007-2010 CBAs with Locals 18/2 attached as Exhibits B and C to Plaintiffs' motion for summary judgment (Docs. 20-6 and 20-7).

• Defendant was bound by the 1995-1998 collective bargaining agreement with Locals 45/55 attached as Exhibit F to Plaintiffs' motion for summary judgment (Doc. 20-11). It was bound as a non-member of the Columbus Association, and, under that CBA, assigned its bargaining rights to the Columbus Association.

• Defendant was bound by the 2004-2007 collective bargaining agreement with Locals 45/55 attached as Exhibit G to Plaintiffs' motion for summary judgment (Doc. 20-12). It was bound because it had assigned its bargaining rights to the Columbus Association, and never revoked them.

- Defendant is bound by the 2007-2012 collective bargaining agreement with Locals 45/55 attached as Exhibit H to Plaintiffs' motion for summary judgment (Doc. 20-13). It is bound because it assigned its bargaining rights to the Columbus Association, and never revoked them.

In light of the foregoing, Plaintiff's Motion for Summary Judgment (Doc. 20) is **GRANTED IN PART** as set out above. Counsel are **DIRECTED** to call my office (614.719.3370) on or before April 8, 2009 to schedule a telephone status and scheduling conference with me.

s/Mark R. Abel<br>
United States Magistrate Judge